

Eastern District of Kentucky
FILED

FEB 15 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-111-GWU

JESSE M. GIBSON,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to
     Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Gibson

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Gibson

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Gibson

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Gibson

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Gibson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Gibson

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jesse M. Gibson, was found by an Administrative Law Judge

(ALJ) to have "severe" impairments consisting of degenerative disc disease of the

cervical and lumbar spines, a history of Hepatitis C with a cirrhotic liver, a history of

hypertension controlled with medication, a dysthymic disorder, an anxiety disorder,

and borderline intellectual functioning. (Tr. 33). Nevertheless, based in part on the

testimony of a vocational expert (VE), the ALJ determined that the plaintiff would be

able to return to her past relevant work as a waitress and a cashier and, therefore,

was not entitled to benefits. (Tr. 34-6). The Appeals Council declined to review, and

this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age, education, and work experience, which the VE had described as

"cooking, waitress work, food preparation work, being a cashier" at the light level (Tr.

89-90), could perform any jobs if she were capable of medium level exertion, and

7

Gibson

also had the following non-exertional impairments (Tr. 90). She: (1) could occasionally climb, bend, crouch, and crawl; (2) must avoid hazards; (3) and would have a "limited but satisfactory" ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, relate predictably in social situations, and behave in an emotionally stable manner. (Id.). The VE testified that such a person would be able to return to the work the plaintiff previously did. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. The ALJ had adopted the functional capacity from a prior, final administrative decision issued November 30, 2001 (Tr. 28, 58), having concluded that she was bound by the prior finding under the holding in Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), absent a showing of a deterioration in the plaintiff's condition.

Subsequent to the November 30, 2001 decision, the plaintiff underwent a total abdominal hysterectomy and bilateral salpingo-oophrectomy on January 23, 2002 (Tr. 773-4). She continued to be treated by a hepatologist, Dr. Mark Dougherty, who had diagnosed Hepatitis C by liver biopsy in October, 2001 (Tr. 656) and advised commencement of interferon and ribavirin therapy "in the near future," although this plan was not carried out because of the plaintiff's inability to pay (Tr. 789). The

8

physician recommended that the plaintiff apply to a medical assistance and indigent care program. (Id.). A cervical spine MRI in January, 2003 was interpreted as showing bulging at two levels. (Tr. 858, 919). The plaintiff's treating family physician, Dr. C. A. Moore, wrote a letter dated April 13, 2004 stating that the plaintiff's problems were multidisc diseases of the lumbosacral and cervical spines, with chronic pain, stiffness, Hepatitis C, anxiety, and hypertension. (Tr. 943). The pain caused an inability to lift, bend, crawl, sit for any length of time or walk without pain, as well as having a severe decrease in energy and increasing weakness and fatigue due to Hepatitis C. (Id.). On her most recent physical examination on February 2, 2004, the plaintiff continued to have numbness and tingling in the hands and arm, pain and spasms in the cervical and lumbosacral spine regions, and cervical spine range of motion decreased 30 percent. (Id.). Dr. Moore opined that the plaintiff was "100 percent disabled." (Id.).

The only other examining physician to offer an opinion was Dr. Jules Barefoot, who conducted a consultative examination of the plaintiff on September 3, 2003, and reviewed records from Dr. Dougherty. (Tr. 920, 927). The plaintiff related her history of a Hepatitis C diagnosis and noted that she had undergone MRIs for chronic neck and low back pain. (Tr. 921). She described pain radiating into both arms, as well as low back pain radiating into the legs. (Id.). Dr. Barefoot's examination showed decreased sensation to soft touch of the left fifth finger, although there were no focal

9

Gibson

motor deficits, and the plaintiff could bend forward 75 degrees at the waist, although her ability to squat was poor. (Tr. 922). He completed a functional capacity assessment indicating that the plaintiff could occasionally lift up to 100 pounds and frequently lift 20 pounds, and could sit for eight hours continuously, but would be limited to standing only two hours in an eight-hour day "with rests," and walking two hours in an eight-hour day "with rests," occasionally bending, squatting, crawling, climbing, and reaching above shoulder level, and having mild restrictions on working around unprotected heights, moving machinery, and driving automobile equipment. (Tr. 926).

Assuming, without deciding, that the ALJ was not bound by Dr. Moore's opinion of total disability, Dr. Barefoot clearly identified restrictions that were not compatible with medium level exertion. "Most medium jobs, like most light jobs, require the worker to stand or walk most of the time . . . to perform the full range of medium work as defined, a person must be able to do both frequent stooping and frequent crouching--bending both the back and the legs--in order to move objects from one level to another or to move objects near foot level." Social Security Ruling 83-14, p. 5. Clearly the limitations on standing and walking given by Dr. Barefoot would be incompatible with standing and walking "most of the time," as his restrictions to occasional bending and squatting would be inconsistent with a requirement for frequent stooping and crouching. Regarding the specific

10

Gibson

occupations described by the VE in response to the hypothetical question, the

Dictionary of Occupational Titles (DOT) notes that even a job that requires only

negligible lifting should be rated as "light" when it requires walking or standing to a

significant degree. Furthermore, the occupation of "Cashier II," DOT 211.462-010,

is said to require "frequent" reaching, which may be incompatible with Dr. Barefoot's

restriction to occasional reaching above shoulder level. The job of waiter/waitress,

DOT 311-477-030, also requires frequent reaching, and could be presumed to

involve more than the standing and walking limitations given by Dr. Barefoot.

Since the only evidence of fewer restrictions in connection with the present

application was from state agency physicians who did not have the benefit of a

review of the reports of Dr. Barefoot and Dr. Moore (Tr. 863-70, 910-18), they did not

provide substantial evidence to overcome the opinions of the examining sources.

See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Consequently, a remand

will be required for further consideration of the plaintiff's residual functional capacity.

There is also an issue regarding the plaintiff's mental restrictions. Records

from the Comprehensive Care Center (CCC) indicate that the staff psychiatrist saw

the plaintiff on referral from Dr. Moore in March, 2004 for depression and episodes

of hearing voices. (Tr. 939). He diagnosed recurrent severe major depressive

disorder with psychotic symptoms, and "rule out" dysthymia, and prescribed

medications Zoloft and Risperdal, the latter being an antipsychotic medication. (Tr.

11

940).   The plaintiff's Global Assessment Functioning (GAF) was given as 55,
reflecting moderate symptoms, however.  She had previously been examined by Dr.
William Rigby, a psychologist, in April, 2002, who diagnosed an anxiety disorder and
borderline intellectual functioning, and noted a "fair" ability to tolerate the stress and
pressures of work activity.  (Tr. 801-2).  The term "fair" was not defined.  Dr. Rigby
felt that the plaintiff was not giving her best efforts on intelligence and achievement
testing, and the plaintiff was again tested by a psychologist, James Leisenring, on
October 13, 2003.  Mr. Leisenring had Dr. Rigby's report available for review.  (Tr.
928).  The plaintiff achieved even lower IQ scores than before, but Mr. Leisenring
questioned whether she put forth her best effort; however, he diagnosed a dysthymic
disorder and an anxiety disorder, along with measured mild mental retardation but
estimated borderline intellectual functioning.  (Tr. 931-2).  Mr. Leisenring completed
a mental residual functional capacity form indicating that the plaintiff had a "seriously
limited but not precluded" ability to deal with the public, deal with work stresses, and
behave in an emotionally stable manner.  (Tr. 934-5).  The ALJ rejected these
limitations because of Mr. Leisenring's finding that the plaintiff was not giving her
best effort on testing.  (Tr. 31).  However, Mr. Leisenring separated his conclusions
based on the plaintiff's lack of effort from the restrictions based on the plaintiff's
"seemingly 'legitimate' mixed depression with anxiety" and "apparent significant
mixed depression with anxiety" which rendered her "emotionally labile, 'unstable,'

12

Gibson

and socially withdrawn." (Tr. 934-5).  The VE testified that with Mr. Leisenring's

restrictions, there were no jobs that the plaintiff could perform.  (Tr. 91).  Since Mr.

Leisenring's restrictions are not factually inconsistent with the conclusions of Dr.

Rigby or the diagnosis of her treating psychiatrist, this matter should also be

reconsidered on remand.

The decision will be remanded for further consideration.

This the ___/5___ day of February, 2006.

G. WIX UNTHANK
SENIOR JUDGE

13